Beverly **BEJA**, Plaintiff-Appellant,

v.

Willa J. **JAHANGIRI** et al., Defendants-
Appellees,

Robert L. Guy and Carlton E. Byrne,
Defendants.

No. 346, Docket 71–1905.

United States Court of Appeals,
Second Circuit.

Argued Dec. 9, 1971.

Decided Jan. 11, 1972.

------

Marvin George Florman, New York City (Edward Pious, New York City, on the brief), for plaintiff-appellant.

Sabino J. Berardino, New York City (Garbarini, Scher, DeCicco & Berardino, New York City, on the brief for appellees Jahangiri; and Schaffner & D'Onofrio, New York City, on the brief for appellee Powers Regulator Co.), for appellees.

Before ANDERSON, OAKES and TIMBERS, Circuit Judges.

ANDERSON, Circuit Judge:

On August 30, 1968, Beverly Beja, a citizen and resident of New York, was injured when the automobile in which she was riding was involved in a four-car collision in California. She instituted this negligence action in the Bronx County, New York, Supreme Court against the owners and operators of the other three vehicles and sought to obtain jurisdiction over two of these defendants, Willa and Mansour Jahangiri, who are citizens and residents of California, by attaching their insurer, Farmers Insurance Group (Farmers) in New York.[1] The Jahangiris removed the case to the United States District Court for the Southern District of New York and were granted a motion to dismiss by Judge MacMahon on February 16, 1971, on the ground that the attachment had been improperly served on the New York Superintendent of Insurance. On March 3, 1971, Judge Frankel granted a new order of attachment, which was served on Farmers' agent, Gotsch, Steinmetz and Winston, insurance brokers, in New Rochelle, New York. Personal service was made upon the Jahangiris in California. On July 1, 1971, Judge Cooper vacated this second attachment on the ground that Farmers was not doing sufficient business in New York to sustain jurisdiction over it as the garnishee.

The single issue in this case concerns the extent to which an insurer must be "present in" or "doing business in" the State of New York to give the courts of New York jurisdiction over the parties under the holding in Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966), by virtue of foreign attachment of an insurer's obligation to indemnify. As this is a diversity case the question must be resolved under New York law, Arrowsmith v. United Press International, 320 F.2d 219 (2 Cir. 1963).

Affidavits submitted on behalf of the appellees and uncontroverted statements presented by the appellant show that the Truck Insurance Exchange has been continually licensed to do business in New York as a foreign reciprocal insurer since February 8, 1951, and Farmers Insurance Exchange has been so licensed since September 29, 1954. It is also admitted that these companies are the insurers of the appellees, Jahangiri.

The firm of Gotsch, Steinmetz and Winston has been the New York agent for Farmers since 1951 and countersigns several of its documents a month, most of which are used to permit various trucking concerns to operate within New York state. This agent has no authority to write insurance for Farmers, but in 1969, the only year in which figures are given, Farmers did issue approximately $15,000 worth of workmen's compensation, $100 worth of automobile personal injury, and $60 worth of property damage insurance in New York.

---

1. The evidence indicates that the policy was issued by the Farmers Insurance Group, but that the Farmers Insurance Exchange and the Truck Insurance Exchange, members of the group, were the corporations actually attached in New York. Both of the Exchanges and the Group may be treated as one entity, called Farmers.

The basic procedure for the attachment of insurance policies established by *Seider, supra,* has been reaffirmed by the New York Court of Appeals in Simpson v. Loehmann, 21 N.Y.2d 305, 287 N.Y.S.2d 633, 234 N.E.2d 669 (1967), reargument denied, 21 N.Y.2d 990, 290 N.Y.S.2d 914, 238 N.E.2d 319 (1968), and accepted by the majority of this court, sitting en banc, Minichiello v. Rosenberg, 410 F.2d 106 (2 Cir.), cert. denied, 396 U.S. 844, 90 S.Ct. 69, 24 L.Ed. 2d 94 (1969). The present case, however, is indicative of the multitude of problems that have arisen from the *Seider* doctrine; and we reiterate the hope that Judge Friendly expressed in *Minichiello, supra,* 410 F.2d at 119, that either the New York courts or its legislature would give further consideration to the *Seider* procedure and the complexities it has created.

■■ Under the *Seider* holding the obligation of an insurer to indemnify its insured is a debt capable of being attached under NYCPLR §§ 5201, 6202. Therefore, if jurisdiction is acquired over the insurer, *see* Morris Plan Industrial Bank v. Gunning, 295 N.Y. 324, 330, 67 N.E.2d 510 (1946), there is *quasi in rem* jurisdiction over out-of-state residents. Because the claim here did not arise out of acts done in New York, its long-arm statute, NYCPLR § 302, does not apply and consequently jurisdiction must be founded on NYCPLR § 301, which provides:

"A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore [before 1963]."

This means, in effect, that for the purpose of ascertaining whether or not foreign corporations are subject to suit within the state, the New York courts will apply a "doing business" test. Although none of the leading cases in the *Seider* field has dealt explicitly with the issue of jurisdiction over the insurer-garnishee, they have all summarily stated that each of the respective insurers was "doing business" in New York, *Seider, supra,* 269 N.Y.S.2d at 100, 216 N. E.2d at 313; *Simpson, supra,* 287 N.Y. S.2d at 634, 635, 234 N.E.2d at 670; *Minichiello, supra,* 410 F.2d at 107, 108, 110, 121.

Under New York law, however, "doing business" has no well-defined meaning. Judge Cardozo gave the generally accepted explanation of the term in Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 268, 115 N.E. 915, 918 (1917). He said:

"[T]here is no precise test of the nature or extent of the business that must be done. All that is requisite is that enough be done to enable us to say that the corporation is here."

A more recent expression of this same view is contained in Bryant v. Finnish National Airline, 15 N.Y.2d 426, 432, 260 N.Y.S.2d 625, 629, 208 N.E.2d 439, 441 (1965), in which the court said, "The test for 'doing business' is and should be a simple pragmatic one. . . ."

■ The New York Court of Appeals has, in general, taken a liberal view toward finding that foreign corporations are doing business within the state, and a number of its opinions have indicated that the "doing business" standard is practically equivalent to the most permissible one that the Constitution will allow. Due process requires only that a foreign corporation "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" The test is a qualitative, rather than a quantitative one. It is of scant value to attempt to measure whether the corporation could have done "a little more or a little less" within the state, International Shoe Co. v. Washington, 326 U.S. 310, 316, 319, 66 S.Ct. 154, 158, 159, 90 L.Ed. 95 (1945). A number of recent New York Court of Appeals decisions imply that this test is synonymous with the dimensions of the New York "doing business" test, *see e. g.,* LaBelle Creole International v. Attorney-General, 10 N.Y.2d 192, 197, 219 N.Y.S.2d 1, 5, 176 N.E.2d 705, 708 (1961)

(quoting exact language from *International Shoe*); Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 224 N.E.2d 877, 878 (1967); Public Adm'r of New York County v. Royal Bank of Canada, 19 N.Y.2d 127, 130, 278 N.Y.S.2d 378, 380, 227 N.E.2d 851, 853 (1967); Elish v. St. Louis Southwestern Ry. Co., 305 N.Y. 267, 269, 112 N.E.2d 842 (1953).

■ There is no constitutional impediment to jurisdiction in the present case[2]; the fact that Farmers has been continually licensed in New York for twenty years, has an agent and office there, and regularly does some business in the state is enough to meet the fairness test.

Although it cannot be unequivocally asserted that New York has extended its jurisdiction over foreign corporations to the fullest constitutional reach, it has gone very far in that direction, see opinion by Kaufman, Judge (then district judge) in Ultra Sucro Co. v. Illinois Water Treatment Co., 146 F.Supp. 393, 395 (S.D.N.Y.1956). As Judge Breitel said in his concurrence to *Simpson, supra,* 21 N.Y.2d at 316, 287 N.Y.S.2d at 641, 234 N.E.2d at 675:

"On the basis of the rule in the *Seider* case, it will be the rare plaintiff who cannot invoke the jurisdiction of New York courts . . . since it will be a very small insurance company that does not have a palpable contact with [the] State."

It appears that the New York Court of Appeals has sustained *in personam* jurisdiction under NYCPLR § 301 over foreign corporations each time it has considered the issue in the past decade. *See, e.g., Frummer, supra; Royal Bank, supra; Bryant, supra;* Taca International Airlines v. Rolls-Royce of England, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965); *LaBelle Creole, supra.*

■ Another indication that Farmers was doing business in New York is the fact that it was licensed to transact a wide variety of insurance business within the state. Although the mere authorization to do business, even though granted at a corporation's request, may not be conclusive on the issue of jurisdiction under NYCPLR § 301, *cf.* Saggese v. Peare, 33 A.D.2d 900, 307 N.Y.S.2d 118 (App.Div. First Dep't. 1970), it is certainly very strong evidence that the corporation is subject to *in personam* jurisdiction, *see* 2 J. Moore, Federal Practice ¶ 4.25[5], at 1171 (2d ed. 1970); *cf.* Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

While the New York Court of Appeals has made no express pronouncement on what effect the bare fact of being licensed has for jurisdictional purposes, it has pointed out in a number of cases in which it was considering jurisdiction under NYCPLR § 301 that the foreign corporation was not authorized to do business in New York, implying that it was an important factor, *see, e.g., Bryant, supra; Taca, etc., Airlines, supra; Elish, supra; Tauza, supra.* Several New York lower courts have held that such authorization creates a presumption that the corporation is doing business in New York, Burke v. Galveston, H. & H. R. R. Co., 173 App.Div. 221, 159 N.Y.S. 379 (App.Div. First Dep't. 1916); Hamilton v. Berwind-White Coal Mining Co., 60 N.Y.S.2d 561 (Sup.Ct.1945); L. B. Foster Co. v. Koppel Industrial Car & Equipment Co., 127 Misc. 51, 215 N.Y.S. 214 (1926).

■ Activities insufficient to require a foreign corporation to be licensed in the state may still be adequate to make it amenable to process; and jurisdiction does not fail simply because the cause of action sued upon has no relation in its origin to the corporate ac-

2. The defendants have not challenged the New York court's jurisdiction over Farmers on constitutional grounds, and it would have been futile to attempt to do so. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm., 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950).

tivities carried on within the state, *Tauza, supra,* 220 N.Y. at 267–268, 115 N.E. 915; see also *Frummer, supra; cf.* Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

■ A cardinal point in finding a foreign corporation present in the state is the fact that it was there "with a fair measure of permanence and continuity," *Tauza, supra,* 220 N.Y. at 267, 115 N.E. at 917. The facts that an insurer was licensed to do business in New York and had an office there, were held by a lower court to be determining factors in finding jurisdiction over it in Lefcourt v. Sea Crest Hotel & Motor Inn., Inc., 54 Misc.2d 376, 282 N.Y.S.2d 896 (1967).

Even though present primarily through an independent agent, *cf.* Sterling Novelty Corp. v. Frank & Hirsch Distributing Co., 299 N.Y. 208, 211, 86 N.E.2d 564 (1949), Farmers maintained such agency and an office in New York [3] and carried on activities relating to the insurance business for twenty years, which is sufficient to meet the test of permanence and continuity.

The nature of the business involved can have a direct bearing on a finding of jurisdiction based upon "doing business." For example, in *Simpson, supra,* 21 N.Y.2d at 311, 287 N.Y.S.2d at 637, 234 N.E.2d at 672, a reason given for finding jurisdiction over the insurer was that it was a company specially regulated by the state.[4] Moreover, New York Insurance Law, McKinney's Consol. Laws, c. 28 § 41(3)[5] contains a very broad description of what constitutes an insurance business in the state. While this statutory definition is not necessarily sufficient, standing alone, to bring the case within the application of NYCPLR § 301, it implies the intention on the part of the State of New York to regulate and assume jurisdiction over a great many aspects of the insurance business.

■ The foregoing considerations, together with New York's generally liberal attitude in favor of finding jurisdiction based upon relatively few acts of "doing business," particularly in the realm of insurance, satisfy us that there was jurisdiction over the defendants-appellees, Jahangiri, by virtue of and to the extent of the attachment of their insurer's obligation to indemnify.

The order below is, therefore, reversed.

---

3. See, N.Y.Ins.Law § 422(1).

4. As a constitutional matter, the Court has suggested that a state might exercise greater jurisdiction over corporations engaged in activities subject to special regulation than due process might otherwise allow, Hanson v. Denckla, 357 U.S. 235, 252, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm., 339 U.S. 643, 647–648, 70 S.Ct. 927, 94 L.Ed. 1154 (1950).

5. N.Y.Ins.Law § 41(3) provides:

"[A]ny of the following acts in this state, effected by mail from outside this state or otherwise, by any person, firm, association, corporation or joint-stock company shall constitute doing an insurance business in this state . . . (a) the making, as insurer, or proposing to make as insurer, of any insurance contract, including but not limited to (i) issuance or delivery of a policy or contract of insurance to a resident of this state or to any firm, association, or corporation authorized to do business herein . . . . "