Dwight LAMAR, Plaintiff,

v.

AMERICAN BASKETBALL ASSOCIA-
TION, Arena Sports, Inc. d/b/a Indiana
Pacers and John Y. Brown, Defendants.

No. 76 Civ. 3051–CSH.

United States District Court,
S. D. New York.

April 12, 1979.

Jerry A. Davis, New York City, for plaintiff.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendants; David Rees Davies, New York City, of counsel.

John S. Reed, Greenebaum, Doll & McDonald, Louisville, Ky., for defendant John Y. Brown.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Concepts of personal jurisdiction are continually expanding within the shifting constitutional limits of due process. At issue in this case is jurisdiction over a non-resident individual premised on his "doing business" in New York.[1] *See* N.Y.C.P.L.R. § 301 (McKinney 1972 & 1978–79 Supp.); *ABKCO Industries, Inc. v. Lennon*, 85 Misc.2d 465, 377 N.Y.S.2d 362 (S.Ct.1975), *aff'd in part*, 52 A.D.2d 435, 384 N.Y.S.2d 781 (1st Dept. 1976). Simply stated the question is whether a controlling shareholder, officer and chairman of a New York corporation is amenable to suit here on claims unrelated to his contacts with New York.

### I.

The issue arises relatively late in the litigation. Plaintiff Dwight Lamar commenced this action on July 9, 1976, against the American Basketball Association ("ABA") and Arena Sports, Inc., doing business as the Indiana Pacers ("Pacers"). The complaint, as amended in December 1976, sought among other things damages for breach of contract relating to Lamar's employment as a professional basketball player during the 1975–76 and 1976–77 playing seasons. The contractual arrangements among Lamar, the ABA and the Pacers are set forth in a Memorandum Opinion and Order of this Court, dated June 23, 1977, and need not be reiterated here. Suffice it to say that Lamar alleged two items of damages. The first, in the amount of $15,-000, represented the balance of compensation allegedly due Lamar for the 1975–76 season under his Pacers/ABA contract. The second, $35,000, represented the difference between Lamar's 1976–77 season earnings and the compensation allegedly guaranteed under his Pacers/ABA contract.

In response to plaintiff's motion for summary judgment on the $15,000 claim, this Court issued the Opinion and Order referred to above. Partial summary judgment was denied, essentially because the record was inadequate with respect to two occurrences.

The first concerned a May 1976 contract (the "Brown contract") between Lamar and John Y. Brown, "owner" of the ABA's Kentucky Colonels franchise (see note 10, *infra*), whereby Lamar contracted to perform player or public relations services for the Colonels, commencing October 1, 1976. The contract was apparently accompanied by a $15,000 payment from Brown to Lamar. The ABA and the Pacers urged that the Brown transaction may have constituted a novation relieving them of liability for compensation due for the 1975–76 season. However, Brown was not yet a party to the suit and the facts surrounding the $15,000 payment, and thus its legal effect, were unclear.

Secondly, it appeared that, notwithstanding the Brown contract, Lamar had played professional basketball for the Los Angeles Lakers during the 1976–77 season. The nature of the contractual arrangements among Lamar, the Pacers, Brown, and the Lakers was inadequately addressed on the summary judgment motion.

The final factor militating against summary judgment at that time was the fact that Lamar had moved, during the pendency of the summary judgment motion, to join Brown as an additional defendant.

---

1. The constitutionality of "doing business" jurisdiction over individuals has not been addressed on this motion. While there is a suggestion to the contrary in early precedent, *Flexner v. Farson*, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250 (1919), modern commentators take the position that the substantial forum contacts required to meet the "doing business" test also satisfy the constitutional standard. *See, e. g.,* Restatement (Second) Conflict of Laws § 35(3) and Comment e (1971 ed.); McLaughlin, 1976 Supplementary Practice Commentary to N.Y.C. P.L.R. § 301 (McKinney 1978–79 Supp.); Uniform Interstate & International Procedure Act § 1.02 (1962); Wisconsin Stats. § 262.05 (1965). *See also, Smith v. Barker*, 306 F.Supp. 1173, 1176 (D.Miss.1968); *ABKCO Industries, Inc. v. Lennon*, 85 Misc.2d 465, 377 N.Y.S.2d 362, 366–67 (S.Ct.1965), *aff'd in part and mod. on other grounds*, 384 N.Y.S.2d 781 (1st Dept. 1976). *Cf. International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Shortly after the denial of summary judgment, this Court entered an Order, on consent of the then parties, permitting the joinder of Brown as an additional defendant under Fed.R.Civ.P. 20, and the filing of a second amended complaint. Docket entries reflect that the following then occurred: Lamar filed a second amended complaint; the ABA and the Pacers filed their second amended answer; Brown was served and filed an answer; Lamar engaged in discovery with respect to Brown; and finally, Lamar stipulated to a dismissal with prejudice of his claims against the ABA and the Pacers, which was so ordered.

In the present posture of the litigation Lamar seeks recovery from Brown, individually, of the $15,000 and $35,000 referred to earlier, apparently based on theories of breach of the Brown contract and tortious interference with plaintiff's rights under his Pacers/ABA contract and the settlement terms of unrelated litigation spawned by the demise of the ABA. Plaintiff also seeks a declaration of rights and liabilities under the Brown contract.

## II.

Discovery has been completed and Brown now moves for dismissal of the complaint, raising three defenses which were asserted by way of his answer and not otherwise waived. *See* Fed.R.Civ.P. 12(h)(1). Brown contends that New York law provides no basis for the exercise of jurisdiction over his person; that service of process in Florida was insufficient to confer *in personam* jurisdiction here; and that venue in this Court is improper.

**2.** Throughout his motion papers, plaintiff refers to Brown's joinder as an indispensible party under Fed.R.Civ.P. 19. Reference to the Court's Order makes clear that joinder was permitted under Rule 20. A Rule 19 joinder is premised on a finding that the party to be joined is "subject to service of process." Fed. R.Civ.P. 19(a). No such finding has been made. Further, Rule 19(a) provides: "If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action."

■ Initially, it must be noted that the Court's order permitting joinder of an additional defendant neither dispensed with the need for acquiring valid *in personam* jurisdiction over Brown, *cf.* Fed.R.Civ.P. 19(a), nor obviated compliance with the requirements of Rule 4, Fed.R.Civ.P., respecting service of process.[2] *See Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974); 7 Wright & Miller, Federal Practice and Procedure § 1659 (1972 ed. & 1979 Supp.). Additionally, pursuant to Rule 82, Fed.R.Civ.P., statutory venue requirements, 28 U.S.C. § 1391(a), must also be met with Brown joined as a defendant. *See* Wright & Miller, *supra* § 1659.

I have concluded, for the reasons set forth below, that considerations of judicial economy and the interests of justice weigh in favor of a transfer of this action. There is a substantial question whether personal jurisdiction exists over the defendant. Further, venue in this forum appears to be improper. While a dismissal of the action on these grounds is the usual outcome, plaintiff has requested transfer as an alternative to dismissal.[3] Both the Supreme Court and the Second Circuit have sanctioned such a procedure. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77 (2d Cir. 1978). Transfer to a district where jurisdiction and venue are proper serves the interests of justice and spares courts and parties the burdens of a litigation premised on possibly erroneous preliminary rulings unrelated to the ultimate merits. *See Columbia Pictures Indus., Inc. v. Schneider*, 435 F.Supp. 742, 748 (S.D.N.Y.1977); *McLaughlin v. Copeland*, 435 F.Supp. 513 (D.Md.1977).

**3.** Affidavit of Jerry A. Davis, Attorney for Plaintiff, October 17, 1978, at ¶ 6. Plaintiff has requested transfer to the District Court for the Western District of Louisiana, embracing the place of his residence. While venue would be proper in that forum, *see* 28 U.S.C. § 1391(a), such a transfer would not cure the jurisdictional objections raised herein. As discussed in text, *post*, transfer is appropriate but to a forum where both venue and jurisdiction are proper.

## III.

*Personal Jurisdiction*

■ Since subject matter jurisdiction here is based upon diversity of citizenship, 28 U.S.C. § 1332, I must look to New York law to determine whether there is a basis for the exercise of personal jurisdiction over Brown. *Beja v. Jahangiri,* 453 F.2d 959 (2d Cir. 1972); *Arrowsmith v. United Press Internat'l,* 320 F.2d 219 (2d Cir. 1963); *Top Form Mills v. Sociedad Nationale Ind.,* 428 F.Supp. 1237 (S.D.N.Y.1977). If such a basis exists, extraterritorial service such as was effected here is authorized under § 313 of the N.Y.C.P.L.R., made applicable to federal court actions by Rule 4(d)(7), (e), (f), Fed.R.Civ.P. *See, e. g., McShan v. Omega Louis Brant & Frere, S.A.,* 536 F.2d 516 (2d Cir. 1976); *Hutton v. Piepgras,* 451 F.Supp. 205 (S.D.N.Y.1978). Plaintiff bears the burden of establishing the existence of personal jurisdiction, *e. g., Lehigh Valley Indus., Inc. v. Birenbaum,* 527 F.2d 87 (2d Cir. 1975); *Columbia Pictures Indus., Inc., supra,* and that statutory prerequisites to the exercise of such jurisdiction have been met. *Lehigh Valley, supra; Top Form Mills, supra.*

It is uncontested that Brown is neither a citizen nor a resident of New York, and that he was not served with process while physically present in the state. The second amended complaint, and the affidavits and memorandum in opposition to this motion present no argument or factual predicate for exercising personal jurisdiction under New York's long-arm statute. C.P.L.R. § 302.[4] Rather, it is plaintiff's contention

---

4. Section 302, entitled "Personal jurisdiction by acts of non-domiciliaries," provides in pertinent part:

"(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

"1. transacts any business within the state; or

"2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

"3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . ." N.Y.C.P.L.R. § 302 (McKinney 1972 & 1978–79 Supp.).

The only possible basis for long-arm jurisdiction would be with respect to Lamar's tortious interference claim; the Brown transaction out of which the breach of contract claim arose has virtually no connection with New York. The tort claim, however, arose out of a letter sent by Brown from out of state to the ABA in New York. *See* text accompanying note 11 *infra.* Plaintiff has not argued that sending the letter into New York constitutes a transaction of business here within the meaning of § 302(a)(1). *E. g., Sayles Biltmore Bleacheries, Inc. v. Soft-Fab Textiles Processors, Inc.,* 440 F.Supp. 1010 (S.D.N.Y.1977); *Pavlo v. James,* 437 F.Supp. 125 (S.D.N.Y.1977). *See Aero-Bocker Knitting Mills v. Allied Fabrics,* 54 A.D.2d 647, 387 N.Y.S.2d 635, 637 (1st Dept. 1976) ("while physical presence is not a prerequisite to constitute transaction of business . . . with few exceptions the Court of Appeals has not upheld jurisdiction in its absence."); 1 Weinstein-Korn-Miller, New York Civil Practice ¶ 302.08 and cases cited therein. *See generally George Reiner & Co., Inc. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844 (1977). With respect to § 302(a)(2), the New York Court of Appeals has given a literal reading to that provision in effect requiring commission of the "tortious act" while physically present in New York. *Feathers v. McLucas,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). *See* McLaughlin, Practice Commentaries to CPLR § 302 (C302:17) (McKinney 1972). Brown's allegedly tortious act in this case occurred in Kentucky.

The enactment of § 302(a)(3), intended to overcome the restrictive ruling in *Feathers,* does not help plaintiff. Under that subsection, the tortious act, if committed outside the state, must cause injury within the state.

The difficulties in applying this provision to cases of economic rather than physical harm, *see American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 432–33 n. 4 (2d Cir. 1971); *Chemical Bank v. W. H. A.,* 403 F.Supp. 1374, 1379–80 (S.D.N.Y.1975), are compounded when plaintiff is an individual. Lamar, who neither lives nor works in New York, has failed to demonstrate the initial requirement of "injury to [his] person or property within the state."

that Brown subjected himself to jurisdiction under C.P.L.R. § 301 by "doing business" in New York.

■ "Doing business" for jurisdictional purposes remains an elusive concept to be applied on a case by case basis. *E. g., Taca Intern'l Airlines v. Rolls-Royce*, 21 A.D.2d 73, 248 N.Y.S.2d 273, 275 (1st Dept. 1964), *aff'd*, 15 N.Y.2d 97, 256 N.Y.S.2d 129 (1965). At its core are notions of systematic and regular business activities within the state conducted "with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917); *McShan, supra.* When such activities are found, a fictive "presence" arises, *see, e. g., Delagi v. Volkswagenwerk AG*, 29 N.Y.2d 426, 430–31, 328 N.Y.S.2d 653, 656–57, 278 N.E.2d 895 (1972), subjecting the party to the state's jurisdiction for all purposes. *Tauza, supra.* Thus, one doing business in New York is amenable to suit on claims even unrelated to activities in the state. *E. g., Tauza, supra; Merrill Lynch v. Lecopulos*, 553 F.2d 842 (2d Cir. 1977); *Top Form Mills, supra.*

The traditional application of "doing business" jurisdiction in New York has been with respect to corporate defendants. *See* McLaughlin, *Practice Commentaries to C.P. L.R. § 301* (McKinney 1972 & 1978–79 Supp.). Two lower New York courts have, however, extended the reach of such jurisdiction to encompass an individual defendant sued on claims that did not arise out of his doing business in New York. *ABKCO Industries, Inc., supra*, 85 Misc.2d 465, 377 N.Y.S.2d 362, *aff'd in part*, 52 A.D.2d 435, 384 N.Y.S.2d 781.[5] Application of the *ABKCO* precedent to the facts of this case

requires analysis of the defendant's alleged New York activities and the consideration of rules which have arisen in the context of "doing business" jurisdiction over corporate defendants. The record, as developed by discovery, must be examined to determine whether plaintiff has met his burden of proof on the jurisdictional issue. *Lehigh Valley, supra; Top Form Mills, supra; Peterson v. Spartan Indus., Inc.*, 33 N.Y.2d 463, 354 N.Y.S.2d 904, 310 N.E.2d 513 (1974). *See generally*, 1 Weinstein, Korn & Miller, *New York Civil Practice*, § 301.07, pp. 3–14, 15 & notes 20, 21.

Plaintiff's contentions are summarized in paragraph 8 of his counsel's affidavit:

"[I]t is the position of affiant and plaintiff that defendant Brown, by his intensive involvement in professional basketball, has subjected himself to the jurisdiction of this Court. . . ."

In support of this conclusion, plaintiff adverts to Brown's service as President of the now-defunct ABA when it was headquartered in New York. There is, however, no showing as to the length of this service, when it began and ended, the nature and frequency of Brown's New York activities in connection therewith, the capacity in which Brown may have acted, or indeed whether such activities as may have occurred were being conducted at the time Brown was served with process in this suit. In short, this bald allegation, even if deemed true, provides no basis for inferring that Brown was doing business in New York in his personal capacity with the requisite permanence and continuity at the time jurisdiction was meant to have attached.

---

5. CPLR § 301 provides that "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Under prior statutory and case law, such "doing business" jurisdiction as New York exercised over individuals was limited to claims arising out of the business conducted in New York. *See Yeckes-Eichenbaum, Inc. v. Wilson McCarthy*, 290 N.Y. 437, 49 N.E.2d 517 (1943); N.Y. Civil Practice Act § 229–b (predecessor statute to CPLR); 1 Weinstein-Korn-Miller, New York Civil Practice ¶ 301.17, pp. 3–42.

The New York Court of Appeals has not ruled on the extension of jurisdiction in *ABKCO*. The Second Circuit has deferred a holding on the question. *Merrill Lynch v. Lecopulos*, 553 F.2d 842, 844 n. 2 (2d Cir. 1977). At least two lower federal courts have, however, accepted the *ABKCO* ruling in dictum. *Hutton v. Piepgras*, 451 F.Supp. 205, 207 n. 4 (S.D.N.Y.1978); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F.Supp. 742, 748 n. 2 (S.D.N.Y.1977).

The main thrust of plaintiff's jurisdictional showing concerns Brown's ownership of a controlling interest in Buffalo Braves, Inc., a New York corporation which owned and operated a professional basketball franchise in Buffalo, New York. Aside from plaintiff's submission of a copy of two pages of the 1977–78 Buffalo Braves Yearbook, the facts underlying this ownership interest are contained in Brown's affidavit.

In March 1977, Brown acquired one-half [6] of the outstanding stock of Buffalo Braves, Inc. He is Chairman of the Board of Directors and an officer of the corporation, and is a member of the Board of Governors of the National Basketball Association.

Service of process on Brown occurred in Florida on August 16, 1977. On August 2, 1978, Buffalo Braves, Inc. divested itself of its then-existing assets, including the Buffalo Braves franchise, and acquired the assets of the Boston Celtics franchise. Brown avers that Buffalo Braves, Inc. is to be merged with a corporation, to be formed and headquartered in Massachusetts, which will operate the Celtics' basketball franchise in Boston.

The record contains no showing as to Brown's actual New York activities in connection with his basketball interests. The most favorable inference to which plaintiff, the non-moving party, is entitled, *see Top Form Mills, supra,* is that Brown has conducted some business activities in New York on behalf of the corporation.[7]

■ Under New York law, Brown's status as the controlling shareholder in a New York corporation does not, without more, subject him individually to personal jurisdiction here. *Ferrante Equip. Co. v. Lasker-Goldman Corp.,* 26 N.Y.2d 280, 283, 309 N.Y.S.2d 913, 916, 258 N.E.2d 202 (1970); *Merkel Asso., Inc. v. Bellofram Corp.,* 437 F.Supp. 612, 617 (W.D.N.Y.1977).[8] There must be facts from which it can reasonably be inferred that the corporation is doing business in New York as Brown's alter ego or agent. *See, e. g., Ferrante, supra; ABKCO, supra; Merkel, supra. See generally,* McLaughlin, *Practice Commentaries to CPLR § 301* (McKinney 1972 & 1978–79 Supp.); 4 Wright & Miller, Federal Practice and Procedure, § 1069 (1979 Supp.).

**6.** The Buffalo Braves Yearbook terms Brown the "sole" owner. Since in any event Brown is the controlling shareholder, the actual percentage of his ownership interest is not significant for the purposes of this decision.

**7.** These corporate activities include Brown's service as the Buffalo Braves' representative on the NBA's Board of Governors. Indeed, Brown asserts, and it is uncontradicted on this record, that "[His] only activities within the State of New York are performed as an officer of, and are related to the business of, Buffalo Braves, Inc." Affidavit of John Y. Brown, September 22, 1978, at ¶ 10.

**8.** Post-*Ferrante*, the only reference in the relevant New York caselaw to shareholder status as a factor supporting personal jurisdiction occurred in a dictum in *Hi-Fashion Wigs v. Peter Hammond Ad., Inc.,* 32 N.Y.2d 583, 347 N.Y.S.2d 47, 300 N.E.2d 421 (1973).
When Hi-Fashion Wigs sued Hammond for fraud in connection with advertising services provided by Hammond, the latter counterclaimed for payment and impleaded plaintiff's president, Schuminsky. Schuminsky, an Oklahoma resident, had negotiated the contract between the principal parties and had personally guaranteed payment to defendant.

The sole issue on appeal concerned personal jurisdiction over Schuminsky. The Court of Appeals held that the guarantee contract was made in New York, the significant factor being Schuminsky's personal delivery of the contract here. Since Schuminsky had transacted in New York the business out of which the claim against him arose, jurisdiction was upheld under CPLR § 302(a)(1).
The Court of Appeals then went on to say, in an alternative holding, that "on the total facts" Schuminsky's New York contacts were such as to render the exercise of jurisdiction fair and reasonable: assuming his guarantee contract was not "made" in New York, it was delivered and to be performed here; further, the corporation, of which Schuminsky was *president and half owner,* did business in New York, and had brought suit in New York, on the contract, which was also to be performed here.
The Court of Appeals' mention of Schuminsky's shareholder/officer status was but a part of the totality of factors. The crucial distinction between *Hi-Fashion Wigs* and the instant case is that the claim against Schuminsky arose out of his individual transaction of business in New York. That factor is absent in this case.

A finding that Buffalo Braves, Inc. is Brown's alter ego would require piercing its corporate veil, an undertaking that the New York courts are noticeably reluctant to engage in. *Merkel, supra,* 437 F.Supp. at 617, *citing Walkovszky v. Carlton,* 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966); *United States v. O'Connell,* 496 F.2d 1329, 1335 (2d Cir. 1974). The mere fact that Brown is the sole or controlling shareholder is insufficient reason to disregard the Braves separate corporate entity. *Ferrante, supra; Dember Constr. Corp. v. Staten Island Mall,* 56 A.D.2d 768, 392 N.Y.S.2d 299 (1st Dept. 1977). As a general rule New York will "pierce the veil" only when necessary to prevent fraud or achieve equity. There must be "sufficiently particularized statements" from which it can be inferred that the corporation is a mere " 'dummy' for its individual stockholders who are in reality carrying on the business in their personal capacities for purely personal rather than corporate ends," *Walkovszky, supra,* 18 N.Y.2d at 418, 276 N.Y.S.2d at 588, 223 N.E.2d at 8, for example by commingling corporate and personal funds, and disregarding the formalities of corporate existence. *Id.* 18 N.Y.2d at 420, 276 N.Y.S.2d at 590, 223 N.E.2d 6. Such particularized facts are wholly lacking here.[9] Thus, there is no basis in this record for deeming Buffalo Braves, Inc. to be Brown's alter ego, doing his business in New York.

An agency theory is likewise unavailing here. It was on this premise that jurisdiction was found in *ABKCO, supra.* There, the non-resident defendant's business activities were conducted "through attorneys and accountants whom he retained in New York on a continuing basis, constitut[ing] doing business in New York." *ABKCO,*

*supra,* 52 A.D.2d 435, 384 N.Y.S.2d at 784 (Appellate Division). In short, the *ABKCO* defendant's New York representatives were performing services on his behalf which in their absence he would have had to perform personally. *See also, Frummer v. Hilton Hotels Internat'l, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Gelfand v. Tanner Motor Tours, Ltd.,* 385 F.2d 116 (2d Cir. 1967), *cert. denied,* 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968). Here, of course, it is not Buffalo Braves, Inc. which is in New York to do Brown's business, but rather Brown who has presumably entered New York to do the corporation's business.

■ This leads to the question whether jurisdiction may be bottomed on Brown's New York activities as an officer and director of the corporation. Under the aptly-named "fiduciary shield" doctrine of New York law, the answer must be "No", at least where there is no allegation that the fiduciary has personally committed a tort, or caused a tortious injury, in New York. *See Lutz Feed Co., Inc. v. Audet & Co., Inc.,* 72 Misc.2d 28, 337 N.Y.S.2d 852 (S.Ct.1972); *Yardis Corp. v. Cirami,* 76 Misc.2d 793, 351 N.Y.S.2d 586 (S.Ct.1974); *Merkel, supra; Lehigh Valley Indus., Inc. v. Birenbaum,* 389 F.Supp. 798 (S.D.N.Y.), *aff'd,* 527 F.2d 87 (2d Cir. 1975); *Fashion Two Twenty, Inc. v. Steinberg,* 339 F.Supp. 836 (E.D.N.Y. 1971); *Path Instru. Internat'l Corp. v. Asahi Optical Co.,* 312 F.Supp. 805 (S.D.N.Y. 1970).

On the record before me, I am compelled to conclude that Lamar has not met his burden of demonstrating that Brown, as an individual, is doing business in New York within the meaning of CPLR § 301.[10]

---

9. Rather, I am requested to take "notice of the generally accepted intelligence that the various entities which have been created to enclose Brown's activities in professional basketball are no more than Brown's alter egos and have no independent existence for contractual purposes separate and apart from Brown." Davis affidavit at ¶ 8.

10. Plaintiff's reliance on *Erving v. Virginia Squires Basketball Club,* 349 F.Supp. 709 (E.D.

N.Y.1972) is misplaced. *Erving* held that a non-New York professional basketball club was doing business in New York by virtue of its regular schedule of games in the state, the business related visits of its officers and employees, and its member status in the ABA "joint venture" headquartered in New York. *Id.* at 714–15.

The organizational structure of Brown's other basketball interest, the Kentucky Colonels, is strikingly similar to that of the Squires in the

Brown's objections to personal jurisdiction and extraterritorial service of process are thus well taken.

*Venue*

■ The venue statute applicable to this diversity action provides:

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." 28 U.S.C. § 1391(a).

Plaintiff is a citizen of Louisiana. At the time suit was originally commenced, venue was laid in this district apparently on the ground that both the ABA and the Pacers "resided" here for venue purposes. Complaint, ¶ ¶ 2, 3. *See* 28 U.S.C. § 1391(c) (corporations); *Denver & Rio Grande R.R. Co. v. Trainmen*, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967) (unincorporated association).

It is uncontested, however, that defendant Brown is neither a citizen, resident, nor domiciliary of the State of New York. Upon Brown's joinder as a defendant under Rule 20, venue could not be laid in this district as the residence of "all defendants."

Rule 82, Fed.R.Civ.P., provides that:

"These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein."

As Professors Wright and Miller explain in their treatise:

"The statutory venue requirements must be met when Rule 20 is invoked. Occasionally, they have the effect of imposing limitations on the permissive joinder of parties. For example, if the court's jurisdiction over an action is not based solely on diversity of citizenship, venue is properly laid only in the district in which all defendants reside or where the claim arose. But in a nonlocal action against multiple defendants, all defendants must be residents of the same state." 7 Wright & Miller, Federal Practice and Procedure, § 1659 at 315.

With the pre-trial dismissal of plaintiff's claims against the ABA and the Pacers, Brown remains the only defendant in this action. Trial in a place of proper venue is a privilege personal to the defendant, *e. g., Shaw v. United States*, 422 F.Supp. 339 (S.D.N.Y.1976), "designed to protect defendants from the inconvenience of defending actions in areas remote from their residences . . . ." *Honda Asso., Inc. v. Nogawa Trading, Inc.*, 374 F.Supp. 886, 889 (S.D.N.Y.1974). While the privilege may be waived, *see* Fed.R.Civ.P. 12(h)(1); 28 U.S.C. § 1406(b), Brown has not done so here.

Since this district is the residence of neither plaintiff nor defendant, venue is proper only if Lamar's claims against Brown "arose" in New York. While there is no precise test for determining where claims arise for venue purposes, it is significant that the claims at issue here have virtually no relation to New York. *See generally Volk Corp. v. Art-Pak Clip Art Serv.*, 432 F.Supp. 1179 (S.D.N.Y.1977); *Weil v. N.Y. Dept. of Transportation*, 400 F.Supp. 1364 (S.D.N.Y.1975); *Ghazoul v. Internat'l Mgmt. Serv. Inc.*, 398 F.Supp. 307 (S.D.N.Y. 1975); *Honda Asso., Inc., supra.*

Thus, the "Brown contract" was negotiated and executed in Kentucky, was between Kentucky residents on the one hand, and Lamar, a Louisiana resident, on the other,

Erving case. Kentucky Colonels, Ltd., a Kentucky limited partnership, owned and operated the Kentucky Colonels, an ABA franchise. The general partner was Kentucky Sports, Inc., a Kentucky corporation of which Brown was an officer and controlling shareholder.
*Erving* stands for the proposition that the partnership, and presumably the general partner, are doing business in this jurisdiction by virtue of the team's New York activities. It is one thing to find the team—and its corporate or partnership owners—subject to plenary jurisdiction here on a doing business basis. It is quite another to hold the shareholders of the corporation that owns the team personally amenable to suit on that rationale. *Erving* simply did not address the latter issue; nor for that matter did the other cases cited by plaintiff on this point. *See, e. g., Hawkins v. N. B. A.*, 288 F.Supp. 614 (W.D.Pa.1968); *A. F. L. v. N. F. L.*, 27 F.R.D. 264 (D.Md.1961).

and contemplated performance primarily in Kentucky on behalf of a Kentucky basketball franchise.

The tortious interference claim arose out of a July 15, 1976 letter, written and mailed in Kentucky, to which Brown and two Kentucky business entities were signatories.[11] The letter failed to identify Lamar as a basketball player carried on the roster of the ABA's Kentucky Colonels franchise; the omission is meant to have interfered with certain of Lamar's prior contractual rights. The only New York contact with respect to this claim is that the letter was addressed, in part, to the ABA in New York.

I am unpersuaded that this single New York contact renders venue here proper, especially when it is considered that Lamar, a non-resident, has suffered no financial injury in New York. Rather, the reasoning of Judge Lasker in *Transamerican Corp. v. Transfer Planning, Inc.*, 419 F.Supp. 1261, 1263 (S.D.N.Y.1976), is persuasive:

"The amendment [to § 1391(b) laying venue where the claim arose] was enacted to fill the anomalous gap in cases where multiple defendants resided in different districts and there was no proper venue despite the existence of federal jurisdiction. In view of this history the amendment should not be interpreted to find venue in any of the multiplicity of districts in which some part of an alleged wrong, however small took place. . . The more persuasive approach appears to be that adopted in *Honda* [*supra*], that at most the statute gives rise to a right to sue only in a district where a substantial part of the claim arose."[12] (citations omitted).

For venue purposes, the claims at issue here arose almost entirely in Kentucky.

### IV.
### CONCLUSION

Since both personal jurisdiction and proper venue are lacking, the action cannot be maintained in this Court. Rather than dismiss, however, a transfer in the interests of justice is appropriate, 28 U.S.C. § 1406(a), both to eliminate jurisdictional objections and to obviate potential timeliness problems concerning plaintiff's tort claim. *See Goldlawr, supra; Corke, supra.* The Eastern District of Kentucky is a forum where the action "could have been brought," 28 U.S.C. § 1406(a), and where jurisdiction over Brown, a resident domiciliary, may clearly be exercised.

Accordingly, the Clerk of the Court shall forthwith transfer the action to the United States District Court for the Eastern District of Kentucky.

It is So Ordered.

---

11. It is unclear whether Brown signed the letter in his individual capacity. The copy submitted to the Court as Exhibit D to plaintiff's second amended complaint contains Brown's signature as agent for Kentucky Colonels, Ltd. and Kentucky Sports, Inc. *Cf.* N.Y.U.C.C. § 3–403 (McKinney 1964). Brown's signature appearing without any representative designation had been struck out.

12. Public Law 89–714, § 1, the 1966 amendment to the venue statute, added the phrase "in which the claim arose" to both subsections (a) and (b) of 28 U.S.C. § 1391. The "substantiality" test applied to the language of § 1391(b) by the *Transamerican* and *Honda* courts is even more appropriate in a case such as this where plaintiff's venue choices are broader under § 1391(a) and where only a single defendant is involved.