**MWL BRASIL RODAS & EIXOS LTDA, Plaintiff,**

v.

**K–IV ENTERPRISES LLC, Defendant.**

No. 09 Civ. 4376 (VM).

United States District Court,
S.D. New York.

Sept. 11, 2009.

Barry R. Fischer, Fischer & Mandell LLP, New York, NY, for Plaintiff.

Timothy Joseph Dunn, II, Dunn & Browne, LLC, River Vale, NJ, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff MWL Brasil Rodas & Eixos Ltda ("MWL"), a Brazilian corporation, brought this diversity action against defendant K–IV Enterprises LLC ("K–IV"), a New Jersey corporation. MWL alleges that K–IV violated the New York Uniform Commercial Code ("NYUCC") by failing to pay for goods MWL delivered to K–IV. MWL further alleges that K–IV converted funds legally owned by MWL. K–IV moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. For the reasons stated below, K–IV's motion is DENIED.

### I. BACKGROUND [1]

MWL manufacturers train wheels in Brazil and exports them to the United States. For nearly twenty years, MWL has sold train wheels to K–IV, and K–IV has resold those wheels to transportation agencies in the United States. In January 2000, MWL and K–IV entered into a Sales Agency Representative Agreement (the "Sales Agreement"). The Sales Agreement granted K–IV the sole and exclusive right to sell MWL's forged and railway

---

**1.** The following facts are taken from the following plaintiff's submissions: MWL's Complaint, dated May 6, 2009 ("Complaint"); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Complaint Pursuant to Rule 12(b)(2), (3) and (6), dated June 30, 2009 ("Pl.'s Opp'n"); and all documents attached thereto or referenced therein. Except where specifically referenced, no further citation to these sources will be made.

wheels in the United States. In exchange, K–IV agreed to solicit orders of MWL's wheels and inform MWL about market conditions in the United States. The Sales Agreement provided that "disagreements and disputes between the parties to the Agreement, which may be made up amicably, shall be settled via an arbitrage" and provided that it would be governed by Brazilian law. (Sales Agreement at 2.) The Sales Agreement was written to be valid for ten years following the signing date, although either party could cancel the agreement, as long as they made such a request in writing sixty days before the requested date of termination.

MWL and K–IV have worked together to supply train wheels to the New York City Transit Authority ("NYCTA") and other transit agencies. Typically, K–IV bids on contracts to supply train wheels to NYCTA. When NYCTA accepts K–IV's bid, NYCTA sends K–IV a purchase order. K–IV then sends a separate purchase order to MWL for the quantity of train wheels requested by the NYCTA. MWL ships the wheels to K–IV, K–IV's custom brokers examine the shipment, and K–IV delivers the shipment to NYCTA's Brooklyn warehouse.

The present dispute between MWL and K–IV began with an August 2007 purchase order ("Initial NYCTA Purchase Order") between the NYCTA and K–IV. In the Initial NYCTA Purchase Order, K–IV agreed to deliver anywhere between 624 to 808 wheels to NYCTA per month until May 2010. The Initial NYCTA Purchase Order was the result of discussions between NYCTA and K–IV, although MWL also participated in those discussions. After K–IV reached an agreement with

NYCTA, it signed a separate purchase order with MWL ("Secondary NYCTA Purchase Order") under which MWL agreed to supply to K–IV the number of wheels agreed to in the Initial NYCTA Purchase Order. MWL manufactured and shipped the wheels to K–IV as agreed to in the Secondary NYCTA Purchase Order. However, MWL claims that K–IV did not make all of its monthly payments to MWL, as required by the Secondary NYCTA Purchase Order. MWL claims that K–IV currently owes MWL $139,120 or $675,989.50 in connection with the Secondary NYCTA Purchase Order, in violation of NYUCC § 2–709(1)(a).[2]

MWL also claims that K–IV owes it money in connection with wheels delivered to the Massachusetts Bay Transportation Authority ("MBTA"). In or about May 2008, MBTA ordered 400 train wheels from K–IV. K–IV issued a corresponding purchase order with MWL ("Initial MBTA Purchase Order"), and MWL manufactured and delivered the wheels in two shipments. The first shipment contained 32 wheels, for which MWL billed K–IV $33,280. The second shipment contained 368 wheels, for which MWL billed K–IV $382,280. MWL claims that, due to K–IV's failure to pay previous invoices, it reached an agreement with K–IV and MBTA in which MBTA would pay MWL directly for the train wheels instead of paying K–IV. MWL alleges that MBTA followed the agreement and paid MWL $33,280 directly for the first shipment of wheels, but accidentally paid K–IV, not MWL, $382,280 for the second shipment. MWL alleges that K–IV retained the $382,280, and is therefore liable for conversion.

---

**2.** In the Complaint, MWL states that K–IV owes it $674,989.50. However, in their Opposition, MWL states that K–IV owes it $139,120. It is unclear whether this change reflects additional payments made by K–IV to MWL or whether MWL simply has recalculated the amount it claims to be owed.

## II. *DISCUSSION*

In reviewing a motion to dismiss, the Court assumes that the plaintiff's factual allegations are true, construes pleadings and affidavits in the light most favorable to the plaintiff and similarly resolves any doubts raised in favor of the plaintiff. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

### A. *PERSONAL JURISDICTION*

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996) (*citing Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).

In a diversity action, a federal court generally may exercise personal jurisdiction to the same extent as courts of general jurisdiction of the state in which the federal court sits. *See* Fed.R.Civ.P. 4(k)(1)(A). Determining whether a court can assert jurisdiction over a defendant entails a two-step inquiry. First, the court must determine whether the forum state grants statutory authority for jurisdiction. *See Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F.Supp.2d 202, 206 (E.D.N.Y.2006). Under New York law, the applicable statutes are New York Civil Procedure Law and Rules ("CPLR") §§ 301 ("§ 301") and 302 ("§ 302"), the long-arm statute. *See Ortiz v. Guitian Bros. Music Inc.*, No. 07 Civ 3897, 2008 WL 4449314, at *8 (S.D.N.Y. Sept. 29, 2008). The two statutes differ in that § 301 is a general jurisdiction statute, while § 302 is a specific jurisdiction statute; § 302 requires that the cause of action be related to the factors giving rise to jurisdiction, while § 301 does not. *See McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323 (1981). If a court determines that New York State does grant statutory authority for jurisdiction, then the court moves on to the second step and determines whether the assertion of jurisdiction complies with due process. *See Wickers*, 411 F.Supp.2d at 206.

### 1. *Statutory Authority for Jurisdiction*

■ Under § 301, a state court has jurisdiction over a defendant if that defendant is "present" in the state, and a corporate defendant is present in New York State if that corporation is "doing business" in the state. *See* N.Y. C.P.L.R. § 301; *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir.2000). "A corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action ... if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Wiwa*, 226 F.3d at 95 (*quoting Hoffritz*, 763 F.2d at 58).

Many courts have found that registering with the Secretary of State to do business in New York means that the corporation is "doing business" in New York, and that § 301 therefore automatically conveys jurisdiction when a corporation is registered to do business in New York. *See, e.g., Rockefeller Univ. v. Ligand Pharm.*, 581 F.Supp.2d 461, 466 (S.D.N.Y.2008); *Chong v. Healthtronics, Inc.*, No. CV–06–1287, 2007 WL 1836831, at *6 (E.D.N.Y. June 20, 2007); *Obabueki v. International Bus. Mach. Corp.*, No. 99 Civ. 11262, 2001 WL 921172, at *5 (S.D.N.Y. Aug. 14, 2001); *Augsbury Corp. v. Petrokey Corp.*, 97 A.D.2d 173, 470 N.Y.S.2d 787, 789 (App. Div.3d Dep't 1983). Other courts have been reluctant to find that registering to do business in New York necessarily con-

veys general jurisdiction. *See, e.g., Beja v. Jahangiri*, 453 F.2d 959, 962 (2d Cir.1972); *Wright v. Maersk Line, Ltd.*, No. 99 Civ. 11282, 2000 WL 744370, at *1 (S.D.N.Y. Jun. 9, 2000); *Bellepointe v. Kohl's Dep't Stores, Inc.*, 975 F.Supp. 562 (S.D.N.Y. 1997). The Court acknowledges that there is some tension between defining "doing business" as involving "permanence and continuity" and granting jurisdiction in a case where a business registered with New York's Secretary of State but has done nothing further to conduct any operations in the state.[3]

In the present case, the Court need not depend on the proposition that registering as a business with New York state is dispositive under § 301, because the Court finds that K–IV meets the standard of "doing business" in New York, regardless of whether registration is viewed as automatically conveying jurisdiction. First, even if business registration is not dispositive, it is nevertheless "very strong evidence" that the corporation is subject to personal jurisdiction. *Beja*, 453 F.2d at 962. Likewise, although solicitation of business alone does not lead to a finding of "doing business," "when there are activities of substance in addition to solicitation there is presence and, therefore, jurisdiction." *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692, 694–95 (1982). Here, not only did K–IV register to do business in New York and solicit business in New York by regularly bidding for NYCTA contracts over the past ten years, but it also frequently made deliveries to NYCTA's Brooklyn warehouse and traveled to New York for discussions with NYCTA. The Court finds that these factors warrant a finding that K–IV has conducted business in New York with permanence and continuity and therefore is subject to jurisdiction under § 301.

■ As an alternate ground for jurisdiction, the Court finds that § 302 grants jurisdiction in the present case. A court can exercise personal jurisdiction over a defendant under CPLR § 302(a)(1) if (1) the company transacts any business within the state or contracts anywhere to supply goods or services to the state, and (2) the cause of action arises out of that business or contract. *See* CPLR § 302(a)(1); *Obabueki*, 2001 WL 921172, at *2 (*citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999)). K–IV clearly satisfies the first prong, as the company both transacted business in the state and contracted to supply goods in the state. K–IV, however, argues that it does not satisfy the second prong, contending that the cause of action does not arise out of any of its New York transactions. The Court disagrees.

"A cause of action 'arises out of' a defendant's transaction of business in New York for purposes of C.P.L.R. 302(a)(1) when there exists an 'articulable nexus' or a 'substantial relationship' between transactions occurring within the state and the cause of action sued upon." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir.2004) (*citing Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir.1998) (quotation marks omitted)). The Court acknowledges that the contract that represents K–IV's business transactions in New York—its contract with the NYCTA—is not the same contract that is the subject of the cause of action, K–IV's contract with

---

**3.** The Court notes that there is an alternative theory for granting personal jurisdiction in cases where a corporation registers in the state: the corporation has consented to jurisdiction through the act of registering with the state. *See Rockefeller*, 581 F.Supp.2d at 466; *Bagdon v. Philadelphia & Reading Coal & Iron Co.*, 217 N.Y. 432, 111 N.E. 1075, 1077 (1916); *Augsbury*, 470 N.Y.S.2d at 789.

MWL. However, those two contracts are substantially related. K–IV formed a contract with the plaintiff as a direct result of its contract with the NYCTA. Had the NYCTA not contracted with K–IV for the supply of wheels, then K–IV would not have contracted with MWL for the manufacture of those very same wheels. MWL even participated in discussions with both K–IV and NYCTA regarding K–IV's contracts with NYCTA. Thus, the cause of action did arise out of K–IV's business activities in New York, and therefore § 302(a)(1) conveys jurisdiction as well.

### 2. Due Process

■ In addition to demonstrating that the Court may properly exercise jurisdiction over K–IV under New York law, MWL must also show that the exercise of jurisdiction comports with federal due process standards. *See Bank Brussels Lambert,* 305 F.3d at 127. To determine whether this exercise of jurisdiction is consistent with due process, the Court must first examine whether K–IV has "minimum contacts" with New York and then inquire whether exercising jurisdiction over K–IV is reasonable. *Id.*

In determining whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice," the Court considers whether extending jurisdiction "is reasonable under the circumstances of the particular case." *Metropolitan Life Ins. Co. v. Robertson– Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996) (*citing International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). For this inquiry, the Court considers

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effec-

tive relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Id.* (*citing Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113–14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

Minimum contacts exist where a defendant "purposefully availed itself" of the privilege of doing business in the forum state and could "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). For the purposes of this inquiry, a distinction is made between specific jurisdiction, where the cause of action arises out of the defendant's contacts with the forum, and general jurisdiction, where the cause of action does not arise out of the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16 n. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Courts require a higher level of contacts in cases of general jurisdiction than in cases of specific jurisdiction, as plaintiffs must show that those contacts are "continuous and systematic" in cases of general jurisdiction. *See id.* at 415, 104 S.Ct. 1868.

The Court finds that K–IV has the requisite minimum contacts with New York, and that exercising jurisdiction over it in this action comports with traditional notions of fair play and substantial justice. As noted above, K–IV meets the criteria for specific jurisdiction because the cause of action arises out of K–IV's contacts with the forum state. K–IV's repeated business transactions with a New York public entity easily constitute the requisite minimum contacts. The Court also finds that K–IV's regular solicitation of business in New York, its regular deliveries of goods to New York, and its registration to do

business in New York represent the "continuous and systematic" contacts required for general jurisdiction. Bringing K–IV to court in New York is also reasonable. The burden on K–IV, a New Jersey-based company, is minimal, and New York has a strong interest in ensuring that matters relating to the supply of goods to New York City's subway system are resolved. Furthermore, allowing the case to proceed in New York both furthers the interest of MWL in pursuing the action it has filed and ensures judicial efficiency by not requiring proceedings to start anew in a neighboring state.

## B. *VENUE*

■ K–IV further moves to dismiss the action on the grounds that venue is improper under 28 U.S.C. § 1391(a) (" § 1391(a)"). The § 1391(a) states:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Even if this venue statute is satisfied, a court may transfer a case "f or the convenience of the parties and witnesses, in the interest of justice," to any district where the action "might have originally been brought." 28 U.S.C. § 1404(a) (" § 1404(a)"). The initial inquiry in deciding a § 1404(a) motion is "whether the case could have been brought in the proposed transferee district." *Herbert Ltd. P'ship v. Electronic Arts, Inc.*, 325 F.Supp.2d 282, 285 (S.D.N.Y.2004).

■ After that threshold determination has been made, courts consider the following factors in deciding whether transfer is warranted: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice. *See id.*

Courts have broad discretion in deciding whether to transfer a case, and should base their rulings on "notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992). Moreover, "the burden of demonstrating the desirability of transfer lies with the moving party." *Fashion–in–Prints, Inc. v. General Textile Printing & Processing Corp.*, No. 93 Civ. 2685, 1994 WL 48833, at *1 (S.D.N.Y. Feb. 14, 1994) (*citing Filmline (Cross–Country) Prods. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir.1989)).

Here, venue is clearly proper under § 1391(a). Not only did a substantial portion of the events giving rise to the claim occur in New York, but K–IV, as a corporate defendant, is also deemed to reside in this district under the venue statute because K–IV is subject to personal jurisdiction in the district. See 28 U.S.C. § 1391(c). K–IV did not propose an alternative venue and instead suggested that the action simply be dismissed, contrary to the plain language of § 1404(a), which empowers courts to *transfer* ac-

tions. Even if K–IV had proposed the District of New Jersey as an alternative venue (the most likely alternative given that K–IV is headquartered there), the Court, in its discretion, would still find that the relevant factors favor keeping the case in the Southern District of New York. K–IV has presented no evidence that it would be more convenient to witnesses to have the case proceed in New Jersey instead of New York. There is no reason to think it would be more convenient to a Brazilian plaintiff to have the case in New Jersey instead of New York, and the burden on K–IV in crossing the river to litigate the case is slight. K–IV has not presented evidence to suggest that any of the other factors favor transferring the case.[4]

## C. *FAILURE TO STATE A CLAIM*

K–IV also moves to dismiss MWL's claims under Federal Rule of Civil Procedure 12(b)(6) ("12 (b)(6)") for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the specula-

tive level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In ruling on a motion to dismiss, courts should "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Secs. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks and citation omitted). A court must accept all well-pleaded factual allegations in a complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

### 1. *Applicability of NYUCC*

■ K–IV asserts that the Complaint fails to state a claim under NYUCC § 2–709(1)(a) because the transaction the claim is based upon is not a New York transaction. N.Y. U.C.C. § 2–102 (McKinney's 2001). K–VI argues that MWL is trying to "piggyback" its sale to K–IV onto the later sale of the wheels by K–IV to NYCTA. (Def.'s Mot. at 8.) K–VI claims that the application of the NYUCC to the transaction must be based on the parties' dealings with one another and not with third parties.

The NYUCC states that in "transaction[s] [that] bear a reasonable relation to [New York] and also to another state or nation," parties may agree that the law of New York or of that other state or nation will apply. NYUCC § 1–105(1). "Failing such agreement this Act applies to transactions bearing an appropriate relation to this state." *Id.* The question of what constitutes an appropriate relation to New

---

4. K–IV also argues that "a transfer to *any* other district is ... inappropriate" because the parties agreed to arbitrate their disputes under the Sales Agreement. (Def.'s Mot. at 8.) MWL argues that the purchase orders, which do not contain an arbitration clause, not the Sales Agreement, control the current

dispute. Because there is no request to compel arbitration before the Court at this time and because MWL has framed its causes of action as relating to the purchase orders and not the Sales Agreement, the Court does not address this issue.

York "is left to judicial decision." *Id.* (Official Comment ¶ 3). "Federal courts interpreting this phrase in New York and other states have taken into account the residences of the parties, the locations of the negotiations, the place of purchase of the goods, and the physical location of the goods at issue." *Zhong Ya Chem. (USA) Ltd. v. Industrial Chem. Trading, Inc.,* No. 99 Civ. 12174, 2001 WL 69438, at *3 (S.D.N.Y. Jan. 26, 2001) (*citing Hadar v. Concordia Yacht Builders, Inc.,* No. 92 Civ. 3768, 1995 WL 301752, at *8 (S.D.N.Y. Apr. 13, 1995)).

MWL's NYUCC claims are based on the purchase orders and not on the Sales Agreement. The purchase orders do not have a choice-of-law provision, and therefore the inquiry is whether the transaction between MWL and K–IV had an "appropriate relation" to New York such that the NYUCC applies. The goods at issue were ordered and produced for NYCTA. They were delivered to New York and were presumably used on New York City subway cars. The parties both participated in negotiations with NYCTA in New York. Therefore, the Court finds that the transaction bears an appropriate relation to New York and that MWL has stated a claim under the NYUCC.

### 2. *Conversion*

K–IV asserts that MWL has failed to state a claim for conversion because MWL has not established legal ownership of the payment MWL claims K–IV wrongfully converted. MWL alleges that it sent two wheel shipments to MBTA and provided it with invoices for each shipment. MWL claims that MBTA paid MWL $33,280 directly for the first shipment, but accidently sent K–IV the check for $382,720 for the second shipment. MWL alleges that K–IV has failed to forward this payment to MWL.

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *See, e.g., Finance One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 333 (2d Cir. 2005). The traditional choice of law rule for torts is *lex loci deliciti,* meaning that the court should apply the law of the state where the tort occurred. *See Hadar v. Concordia Yacht Builders, Inc.,* 886 F.Supp. 1082, 1093 (S.D.N.Y.1995) (*citing Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679, 682 (1985)). While New York has adopted the "paramount interest" test for choice-of-law questions, "*lex loci deliciti* remains the general rule in tort cases to be displaced only in extraordinary circumstances." *Id.* (*quoting Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914, 915 (1978) (internal quotation marks omitted)). In this case, the allegedly converted funds were sent from MBTA in Massachusetts to K–IV in New Jersey. Therefore, the Court finds that the conversion took place in New Jersey, where K–IV is allegedly wrongfully holding the funds that belong to MWL.

Under New Jersey law, conversion is the intentional and wrongful exercise of dominion and control over property belonging to another to the exclusion of the true owner's rights. *See LaPlace v. Briere,* 404 N.J.Super. 585, 962 A.2d 1139, 1144–45 (2009). MWL has alleged that K–IV is wrongfully withholding the $382,720 it was sent in error. The plaintiff in a conversion action need not show that the defendant knew it acted wrongfully, only that defendant knowingly exercised dominion or control over the property. *See id.*

K–IV argues that MWL has not alleged ownership of these funds. MWL alleges that it produced the wheels that were shipped to MBTA and that MBTA paid

MWL directly for the first shipment, but sent the payment for the second shipment to K–IV. MWL states that MBTA agreed to pay MWL directly for the wheels because of problems MWL was having with receiving payment from K–IV for goods MWL shipped. However, this agreement is not mentioned in the Complaint, but instead in MWL's opposition to K–IV's motion to dismiss. Therefore, the Court will not consider this agreement in deciding the motion to dismiss. *See Friedl v. City of New York,* 210 F.3d 79, 83–84 (2d Cir.2000) ("[A] district court errs when it ... relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." (citation omitted)).

Even without considering this agreement, the Court finds that MWL has sufficiently alleged ownership of the funds. MWL alleges that payment for the first shipment made under the purchase order was sent directly to it, and not to K–IV. Payment for the second shipment made under the purchase order was sent to K–IV, and not to MWL. There are no other differences alleged in the two shipments. This set of facts raises MWL's allegation of ownership above mere speculation, satisfying the requirement articulated in *Iqbal* and *Twombly* that a claim must be plausible on its face. *See Iqbal,* 129 S.Ct. at 1949; *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant K–IV Enterprises LLC to dismiss this action (Docket No. 4) for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted is DENIED.

The parties are directed to appear at a pretrial conference on October 9, 2009 at 1:30 p.m. and, in preparation for that conference, to confer and propose an agreed upon Case Management Plan in the form provided by the Court.

**SO ORDERED.**