CHATWAL HOTELS & RESORTS LLC, Plaintiff,

v.

The DOLLYWOOD COMPANY, Herschend Family Entertainment Corporation, and Dolly Parton Productions, Inc., Defendants.

No. 14–cv–8679 (CM).

United States District Court, S.D. New York.

Signed Feb. 6, 2015.

Karl F. Milde, Jr., Milde & Hoffberg, LLP, Robert William Morris, Eckert, Sea-

mans, Cherin & Mellott LLC, White Plains, NY, for Plaintiff.

## MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS

McMAHON, District Judge.

Plaintiff Chatwal Hotels & Resorts LLC ("Chatwal") brings this action against defendants The Dollywood Company ("Dollywood JV"), Herschend Family Entertainment Corporation ("Herschend"), and Dolly Parton Productions, Inc. ("DPP"). The complaint alleges that Dollywood JV, Herschend, and DPP infringed its trademarks and engaged in unfair competition in violation of The Lanham Act, 15 U.S.C. §§ 1051 *et seq.* Chatwal seeks declaratory and injunctive relief, as well as damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1117.

Currently before the court is defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, this court concludes that it does have personal jurisdiction over the defendants; the motion to dismiss is denied.

## BACKGROUND

Plaintiff Chatwal is a New York limited liability company, with headquarters located in New York. (Compl. ¶ 1.) Chatwal owns and operates a chain of luxury hotels in the United States and throughout the world, and has secured the DREAM mark and THE DREAM HOTEL mark in connection with its hotel services. (Compl. ¶¶ 6–10.) Of Chatwal's five DREAM hotels, two are located in New York and one is in Miami Beach. (Compl. ¶ 7.)

Dollywood JV is a joint venture organized under the laws of the State of Tennessee with its principal place of business in Pigeon Forge, Tennessee. (Compl. ¶ 2.) At the time of filing, Dollywood JV was composed of Herschend and DPP. (*Id.*) Herschend is a Missouri corporation with its principal place of business in Georgia. (Wexler Decl. ¶ 3.) DPP is a California corporation with its principal place of business in Tennessee. (Miller Decl. ¶ 3.)

Dollywood JV was formed for the purpose of owning and operating the Dollywood amusement park in Pigeon Forge, Tennessee. (Ross Decl. ¶ 3.) Dollywood JV draws visitors to the theme park by advertising on dollywood.com, and with television advertisements targeting customers in Tennessee and some areas of Georgia. (Ross Decl. ¶ 6.) In 2012, Dollywood JV began plans to open a resort adjacent to the Dollywood theme park, selecting "Dollywood's DreamMore Resort"[1] as its name. (Ross Decl. ¶ 10.) On August 13, 2013, Dollywood JV secured the domain name "dreammoreresort.com" and filed an intent-to-use application to register the DOLLYWOOD'S DREAMMORE RESORT mark in the U.S. Patent and Trademark Office. (Compl. ¶ 13–14.)

The dreammoreresort.com website provides information about the future resort, which is planned to open in the summer of 2015. (Ross Decl. ¶ 12–14.) The website does not yet allow customers to make reservations, and no goods or services are offered for sale. (*Id.* at ¶ 14.) The website does allow customers to sign up for the "Founders Club" free of charge, providing members with news and information regarding the resort. (*Id.*) More than 30,000 people signed up for the Founders

---

1. Dolly Parton has used the phrase "Dream more, Learn more, Care more, and Be more" as her personal philosophy and catch phrase, and she published a memoir entitled "Dream More: Celebrate the Dreamer in You" in 2012. (Ross Decl. ¶ 10.)

Club, and approximately 1% of those individuals were New York residents. (*Id.*)

Dollywood JV contracted with the Ice Theater of New York to perform "Dollywood's Christmas on Ice." (Metzger Decl. Exhibit B.) DPP has also entered into sporadic contracts with New York companies, such as providing composer-lyricist services for a musical performed in New York. (Plaintiff's Opposition at 9.) DPP filed New York state income tax returns from income derived from that contract. (*Id.*) Herschend's subsidiary managed another theme park located in New York for several years. (Plaintiff's Opposition at 10.) Herschend is registered to do business in New York and has paid taxes in New York. (*Id.*)

Chatwal filed suit on October 30, 2014, alleging that the use of the DOLLYWOOD'S DREAMMORE RESORT mark infringes on Chatwal's federally registered trademarks, in violation of 15 U.S.C. § 1114, and unfair competition, in violation of 15 U.S.C. § 1125(a).

In November 2014—after the filing of this Complaint—Dollywood JV sent an offer to all Founders Club members, including the approximate 300 New York residents, allowing up to 1,000 individuals an opportunity to sign up for a special promotion for a $100.00 fee. (*Id.* at 15.)

## DISCUSSION

### I. Standard of Review

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendants. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir.2003); *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir.2001). The plaintiff's burden of proof "depends upon the procedural context in which the jurisdictional challenge in

raised." *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F.Supp.2d 369, 373 (S.D.N.Y.2009). Where, as here, no evidentiary hearing has been held, the plaintiff "need make only a *prima facie* showing by its pleadings and affidavits that jurisdiction exists." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

A determination regarding personal jurisdiction requires a factual inquiry that goes beyond the complaint, therefore "all pertinent documentation submitted by the parties may be considered in deciding the motion." *St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co. Ltd.*, No. 96 Civ. 7269, 1997 WL 357989, at *1 (S.D.N.Y. June 26, 1997), *aff'd*, 152 F.3d 920 (2d Cir.1998) (internal quotations omitted). All pleadings and affidavits are to be construed in the light most favorable to the plaintiff, and any doubt is to be resolved in the plaintiff's favor. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985).

The plaintiff's complaint alleges federal claims of trademark infringement and unfair competition predicated on the Lanham Act, which does not contain its own jurisdictional provision. The court turns to the law of the forum state to determine whether personal jurisdiction exists. *See Overseas Media, Inc. v. Skvortsov*, 407 F.Supp.2d 563 (2d Cir.2006); *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34 (2d Cir.1989). We accordingly turn to the law of New York.

### II. Personal Jurisdiction

■ To determine whether personal jurisdiction exists over a non-domiciliary, the court engages in a two-step inquiry. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir.2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir.2007). First, the court determines whether the laws of the forum state permit

the exercise of jurisdiction over the defendants. If the laws of the forum state permit jurisdiction, the court then determines whether the exercise of such jurisdiction comports with the requirements of due process. *See Best Van Lines,* 490 F.3d at 244.

In New York, there are two ways to establish personal jurisdiction over a defendant: (1) "general jurisdiction" under N.Y. C.P.L.R. § 301; and (2) "specific jurisdiction" under N.Y. C.P.L.R. § 302. Chatwal claims that this court may exercise both general and specific jurisdiction over the defendants. (Plaintiff's Opposition at 4–10.)

### A. The Plaintiff Fails to Establish General Jurisdiction Under CPLR § 301

Under CPLR § 301, a New York court "may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." Section 301 preserves the notion that a court may exercise general jurisdiction over a non-domiciliary defendant if the defendant is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990) (citation omitted); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir.1985). General jurisdiction, or all-purpose jurisdiction, allows a court to hear "any and all" claims against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown,* —— U.S. ——, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011).

In *Daimler AG v. Bauman,* the Supreme Court addressed whether a foreign corporation could be subjected to a California court's general jurisdiction based on the contacts of the defendant's in-state subsidiary. *Daimler AG v. Bauman,* ——

U.S. ——, 134 S.Ct. 746, 759, 187 L.Ed.2d 624 (2014). The Court held that, other than in an "exceptional case," a corporation will be subject to all-purpose jurisdiction only in its place of incorporation and its principal place of business. *Id.* at 746, 761 n. 19. The Court explained that the relevant inquiry is not whether a corporation's activities within a forum are "in some sense continuous and systematic," but rather "whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* at 761 (quoting *Goodyear,* 131 S.Ct. at 2851) (internal quotations omitted). Daimler, a German corporation that manufactures Mercedes–Benz vehicles in Germany, *Id.* at 752, had a United States subsidiary, MBUSA, who was the exclusive importer and distributor of Daimler Mercedes–Benz vehicles for sale in the United States, including California. *Id.* Within the state of California, MBUSA had a regional office, a vehicle preparation center, and a classic center, and it was the largest supplier of luxury vehicles in California. *Id.* Obviously the subsidiary had a continuous presence in California, and the parent was able to do business in California through the subsidiary. Nonetheless, Daimler's contacts with California were deemed not significant enough to render the corporation "at home" in the forum. *Id.* at 762.

In *Gucci America, Inc. v. Weixing Li* the Second Circuit had occasion to analyze the impact of the *Daimler* opinion in connection with the New York long-arm statute. *Gucci America, Inc. v. Weixing Li,* 768 F.3d 122 (2d Cir.2014). The question arose in the context of whether a foreign bank with four branch offices in the United States, including one in New York, were subject to general jurisdiction in a New York court. *Id.* at 135. Prior to *Daimler,* controlling precedent would have subject-

ed the foreign bank to general jurisdiction by virtue of their "continuous and systematic course of doing business" out of the New York office. *Id.* at 136. After *Daimler,* the existence of a local office in New York was deemed insufficient to make out an "exceptional case" where the Bank's contacts were "so continuous and systematic as to render it essentially at home in the forum." *Id.* at 135 (quoting *Daimler,* 134 S.Ct. at 761).

■ Prior to *Daimler* and *Gucci,* New York courts delineated several factors to consider whether a corporations activities were to some degree "continuous and systematic" to establish general jurisdiction: (1) the existence of an office in the forum, (2) the solicitation of business in the state, (3) bank, accounts and other property in the state, (4) the presence of employees of the foreign defendant in the state. *Hoffritz,* 763 F.2d at 58. After *Daimler,* these factors are relevant only if they exist to such a degree in comparison to the corporation's overall national and international presence that would render the corporation an "exceptional case" where it is at home in additional forum. *See Daimler,* 134 S.Ct. at 761 n. 19.

■ The evidence here establishes that none of the defendants is incorporated in New York, and none has its principal place of business in New York. None has an office in New York, none has employees in New York, none has a bank account or property in the state. None of the activities of any the defendants is so tied with the state of New York to render general jurisdiction appropriate. Therefore, under *Daimler,* there is no general jurisdiction unless this qualifies as an "exceptional" case for some other reason.

■ Rather than. attempting to establish general jurisdiction over each defendant separately, the plaintiff contends that this court has general jurisdiction over the defendants based on the list of interactions the individual defendants have had with New York over the course of years. However, a defendant's contact with the forum state must be assessed individually. *See Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). To support its claim of general jurisdiction, the plaintiff refers the court to various facts regarding each defendant. (Plaintiff's Opposition at 9–10.)

To support the assertion of general jurisdiction over Dollywood JV, the plaintiff alleges:

1) Dollywood JV worked with The Ice Theater of New York to perform "Dollywood's Christmas on Ice."

2) Dollywood JV set up the dreammore.com website, which can be accessed from anywhere in the world, including in New York.

3) A portion of the admissions tickets to the Dollywood theme park were purchased by New York residents.

4) Dollywood JV allowed New York residents to enroll in the Founders Club.

As to DPP, the plaintiff alleges:

1) DPP entered into sporadic contracts with New York companies.

2) DPP previously filed income tax returns in New York.

As to Herschend, the plaintiff alleges:

1) Herschend was involved with the operations. of an entirely distinct New York theme park.

2) Herschend is registered to do business in New York and has paid taxes in New York.

The New York ties of Dollywood JV clearly do not make this "an exceptional case" where a defendant's contacts are "so continuous and systematic as to render [it]

essentially at home in the forum." *See Daimler*, 134 S.Ct. at 761 n. 19; *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir.2014). Of the facts alleged by the plaintiff, the only activity of Dollywood JV that is of any continuous nature is the existence of the dreammore.com website. Nothing in the record suggests that the dreammore.com website is purposefully directed towards New York; rather, the website is accessible to anyone with an internet connection from anywhere in the world. The existence of such a website does not provide a basis for concluding that Dollywood JV was "doing business" in New York. *See Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05 Civ. 6939, 2006 WL 1147963, at *4 (May 1, 2006).

■ The various contracts that DPP entered into in New York clearly also fail to support a finding of continuous and systematic activity. The solicitation of business in New York without more substantial activities within the forum is insufficient to find a corporation's presence in the forum. *See Landoil Res. Corp.*, 918 F.2d at 1043 (finding that thirteen business trips to New York over an eighteen month period to solicit business was insufficient to establish general jurisdiction).

The strongest argument for establishing general jurisdiction over any of the defendants stems from Herschend's being registered to do business in the forum. Prior to *Daimler*, some courts concluded that registering to do business in the state of New York automatically confers general jurisdiction on that person or entity. *MWL Brasil Rodas & Eixos LTDA v. K–IV Enters. LLC*, 661 F.Supp.2d 419, 424 (S.D.N.Y.2009). *See e.g., Rockefeller Univ. v. Ligand Pharm.*, 581 F.Supp.2d 461, 466 (S.D.N.Y.2008) ("[D]efendant was on constructive notice that New York deems an authorization to do business as consent to

jurisdiction."); *Chong v. Healthtronics, Inc.*, No. CV–06–1287, 2007 WL 1836831, at *6 (E.D.N.Y. June 20, 2007) (same). However, other courts were unwilling to find that registering to do business in the state, without more, was enough to confer general jurisdiction over an entity, even though registration is "very strong evidence that the corporation is subject to *in personam* jurisdiction." *Beja v. Jahangiri*, 453 F.2d 959 (2d Cir.1972); *Wright v. Maersk Line, Ltd.*, No. 99 Civ. 11282, 2000 WL 744370, at *1 (S.D.N.Y. June 9, 2000) ("Such authorization does not, in and of itself, constitute 'doing business' in the State so as to subject a foreign corporation to personal jurisdiction.").

After *Daimler*, with the Second Circuit cautioning against adopting "an overly expansive view of general jurisdiction," *Gucci*, 768 F.3d at 135, the mere fact of Herschend's being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation or its principal place of business. *See Landoil*, 918 F.2d at 1043.

**B. Plaintiff Has Established Specific Jurisdiction Under CPLR § 302**

Chatwal asserts specific jurisdiction over the defendants based on three provisions of New York law: C.P.L.R. §§ 302(a)(1), 302(a)(2), and 302(a)(3).

■ Specific jurisdiction exists when "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The relevant New York statute provides,

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal

jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

N.Y. C.P.L.R. § 302. If the long-arm statute provides a basis for personal jurisdiction, the court then considers whether personal jurisdiction comports with due process. *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 164 (2d Cir. 2010).

■ Plaintiff has alleged facts sufficient to meet its burden of establishing jurisdiction over the defendants under CPLR 302(a)(3)(ii). The court therefore need discuss the other sections.

■ Section 302(a)(3)(ii) requires that the plaintiff demonstrate "(1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should

reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce." *Penguin Group (USA) Inc. v. American Buddha,* 609 F.3d 30, 36 (2d Cir.2010).

■ "Where an internet site displays allegedly infringing marks, the tort is deemed to be committed where the website is created and/or maintained." *Starmedia Network, Inc. v. Star Media, Inc.,* No. 00 Civ. 4647, 2001 WL 417118, at *2 (S.D.N.Y. Apr. 23, 2011). The dreammoreresort.com website was created in Georgia and is maintained in Georgia and in Tennessee.

Plaintiff has also met its burden regarding the element of "injury within the state." N.Y. C.P.L.R. § 302(a)(3). The complaint asserts that Dollywood JV's use of the infringing mark will confuse consumers, who will think that Chatwal is associated with Dollywood and will damage the goodwill established with the DREAM luxury hotels. (Compl. ¶¶ 22, 30.) "[I]n trademark infringement cases, the injury requirement is satisfied by harm and threatened harm resulting from actual or potential confusion and deception of internet users in New York State." *Energy Brands Inc. v. Spiritual Brands, Inc.,* 571 F.Supp.2d 458 (S.D.N.Y.2008).

■ The plaintiff successfully established that the defendants reasonably should have expected its actions to have consequences in New York by using the website to attract customers throughout the country and the world. "The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one." *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 241 (2d Cir.1999) (citing *Allen v. Auto Specialties*

*Mfg. Co.*, 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3d Dep't 1974)). Courts require that a defendant foresee that his activities "will have *some consequences* in New York, although not necessarily the exact consequences that occurred." *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F.Supp.2d 349, 363 (S.D.N.Y.2009) (citing *In re DES Cases*, 789 F.Supp. 552, 570 (E.D.N.Y. 1992)). "New York courts require some discernible effort by the defendant to directly or indirectly serve the New York market." *Parker Waichman Alonso LLP v. Orlando Firm, P.C.*, 2010 WL 1956871, at *10 (S.D.N.Y. May 14, 2010).

The plaintiff has alleged facts sufficient to show that the defendants expected their actions to have consequences in New York. The very purpose of the Founders Club and the emails that were sent to members was to spread news and awareness about their allegedly infringing mark and upcoming resort. The defendants should have reasonably expected its acts to have consequences in New York when it used its allegedly infringing website and emails to attract customers across the nation, including New York. *See Starmedia Network*, No. 00 CIV 4647, 2001 WL 417118, at *3 (S.D.N.Y. April 23, 2001).

■ Finally, the evidence clearly establishes that the defendants derive substantial revenue from interstate or international commerce. This last element is meant "to narrow the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character." *LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 713 N.Y.S.2d 304, 95 N.Y.2d 210, 215 (2000). The Dollywood theme park draws visitors throughout the nation and throughout the globe, and the defendants themselves acknowledge this fact.

## III. The Exercise of Jurisdiction Is Consistent With Due Process

■ Having determined that jurisdiction over the defendants is permitted under the New York long-arm statute, the court must engage in a two-part due process inquiry: the "minimum contacts" test, and the "reasonableness" inquiry. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir.2002).

■ The test for minimum contacts is whether a defendant " 'purposefully availed itself' of the privilege of doing business in the forum state and could 'reasonably anticipate being haled into court there.' " *Pearson Educ., Inc. v. Shi*, 525 F.Supp.2d 551, 557 (S.D.N.Y.2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Although a plaintiff's showing of "minimum contacts" is generally favored, it will be defeated if "the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' " *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996) (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174).

■ Reasonableness hinges on whether the assertion of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There are five factors used to determine reasonableness:

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial's [*sic* ] systems's interest in obtaining the

most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies.

*Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir.1999) (internal quotations and citations omitted).

 "The New York long-arm statute does not extend in all respects to the constitutional limits." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60–61 (2d Cir.2012). *See also Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F.Supp.2d 276 (E.D.N.Y.2013); *Topps Co. v. Gerrit J. Verburg Co.*, 961 F.Supp. 88, 90 (S.D.N.Y.1997). Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met.

## CONCLUSION

For the reasons set forth above, the Court denies the defendants' motion to dismiss for lack of personal jurisdiction. The parties have ten days to provide the court with a Case Management Order or the court will enter one for them.

The Clerk is directed to remove the motion at Docket # 17 from the court's list of open motions.